Please call the next case. Miss Kelly, you may proceed. Thank you. Please support counsel. The people did not request argument on this case as they feel that the brief and the motion to add authority of this court's decision of people declined to adequately address the issue in this case. People feel the underlying, the main issue in this case is whether the statute, excuse me, the speedy trial demand was told when the people not only prosecuted the case in August because of the unavailability of the police officer and the trial judge's denial of the motion for continuance, and the time several months later when the defendant reappeared in court on the refiled case. The defendant argued below, relying on the language in Van Schoyck, that a voluntary dismissal and refiling got told at the speedy trial, to argue that in this case that speedy trial demand had not been told, and to argue that, in fact, Van Schoyck had overruled long-settled case law, that another prosecutor that was not taken with the intent to evade speedy trial rights did, in fact, told the speedy trial. The judge granted the defendant's motion. The people have argued in their brief and submit that this recent, this court's recent case inclined as authority for the fact that Van Schoyck is limited to its facts, not the facts in this case, where the case was not repressed on day 82 of the original speedy trial term, and not refiled until, as I said, did not start to run again until the time when the defendant appeared in court. And this, people would ask that this court again find that Van Schoyck did not control this case. But isn't the issue not just when they made an appearance in court, but isn't it about whether or not they're operating or the person is operating under the burden of a bond, and that when they, normally you would subject yourself to the court in order for that bond to be set when it's been refiled. But in this circumstance, isn't there, even though it might have been a mistake, a problem because of the state seeking that bond forfeiture, then there was a warrant and this woman's driver's license was revoked, even though it might have been mistaken, but then she's under the burden of a bond during a time before she comes into court. And so wouldn't that restart the clock ticking? If so, the defendant did not argue when and if the clock was restarted ticking. The people acknowledged that mistakes were made and that, in fact, there was a bond forfeiture, although the record reads bond forfeiture prevents no bond to forfeit. It's unclear what happened. Somehow the Secretary of State was notified of it, notified the defendant, and then that triggered her coming into court and asking to have that bond forfeiture, or excuse me, yeah, the bond forfeiture that had been sent to the Secretary of State, they stated, which it ultimately was. We don't know the dates on that. In fact, as I said, even though the record reflects bond forfeiture in the same sentence, it says no bond to forfeit. So it's the people's position that she was not, in fact, under bond and had been released from her bond on the originally filed DUI case during the time that the statute, that the trial period was told. Okay, thank you. I don't believe there are any questions. I believe, please proceed first. Ms. Fahy. Ms. Fahy. Thank you. Good afternoon, Your Honor, to the Council. Sarah Fahy on behalf of the APALE, Andrea Phillips. I begin by saying the parties have stipulated in the trial court that at least 152 days had passed towards the speedy trial demand on the date that the defendant filed the motion to dismiss. The issue here is the 328-day gap period between the nolley of the original case on August 17, 2007, and the date that the defendant appeared pro se in court, which is July 10, 2008. I would argue that the nolley on August 17, 2007, did not fulfill the speedy trial demand, first, because of the Supreme Court's decision of people to be von Schock, and second, because the case against the defendant was still pending after, for purposes of speedy trial, after the court was nollied. First, in von Schock, the Supreme Court did not limit or qualify its holding. The court stated, although the state may refile dismissed charges before jeopardy attaches, its ability to do so may be complicated by speedy trial concerns. For that reason, voluntary dismissal and subsequent refiling of identical charges do not toll the statute. In this case, the state dismissed the DOI charges against the defendant and then refiled identical charges. The Supreme Court's holding has more force and effect than holdings from other courts in this state, and there's no reason to look outside the plain language of what the Supreme Court said in von Schock. So you're not thinking that opposing counsel's argument that the citation to Fosdick in any way, shape, or form modifies that? I mean, they're probably saying that the Supreme Court is rather unartful in their use of language there, and they're saying Fosdick's citation changes those words. Well, it's my position that there's no reason to look outside the plain language of the court. They cite to Fosdick, but it's our position they're citing to Fosdick for the idea of this nolly not tolling speedy trial demand. In Fosdick, the state nollied the speedy solely to avoid the speedy trial statute. In von Schock, the people weren't nollying for the sole purpose of avoiding the speedy trial statute. They were nolling because they and the appellate court thought they could due to the existing case law regarding compulsory joinder. They all thought the defendant was not entitled to have charges against him dismissed. So I'd argue that the von Schock holding is not just applicable in a situation like in Fosdick, but it's applicable to a wider range of situations for the speedy trial demand purposes. Secondly, I would argue that the case was pending for purposes of the speedy trial demand during this 328-day gap period. Prior to von Schock, it was held that a nolly tolls a speedy trial demand only when all charges against the defendant are dismissed and proceedings are terminated with respect to those charges. And as a result, the defendant is free to go as she pleases and doesn't have to post bond or appear in any other court dates. After the nolly in the first case, 07-DT-335, the state continued to take actions on the case that was allegedly nolly prosecuted. On February 13, 2008, the state issued an arrest warrant on that case, which was nolly prosecuted, which remained active until May 9, 2008. That's 57 days where there was an outstanding warrant on this case that was released to the police and could have been arrested at any time due to this arrest warrant. Further, even after the warrant in the first case was quashed and a new warrant was issued on the second case, the court entered a bond forfeiture in the second case, which resulted in a revocation of Ms. Phillips's driver's license. This revocation of her license also affected her ability to come and go as she pleased. And if she was pulled over with this revoked license, her vehicle could have been forfeitured under civil forfeiture statutes. So we would argue that during this 320-day gap period, one, there was no true nolly because there was a warrant pending in the case that the state says was nollied. And two, after the warrant was quashed in the lower case, Ms. Von Schach was still under the jurisdiction of the courts because her license was revoked and she could have been arrested at any time. And if there's no questions from here, I'll turn it over to Mr. Hamill to do the second portion of our argument. Thank you. May it please the Court, Counsel. Part of the second part of the argument, part of the motion, July 8, 2008, pro se. In the motion, included in part of the package, C11 is the page. She reasons in the motion that the first thing she knew about her license being revoked was Sunday, July 5th. Letters of notice came July 1st. She also realized at that point in time her case was reopened. Since then, she even puts down her mailing addresses changed, but they were both updated. She put updated. What does that mean? Her driver's license was changed but updated with a new address, meaning she wasn't leaving the jurisdiction. She wasn't going anywhere. When she saw she had a problem, clearly not having a driver's license would be a problem to want to come into court and have the conviction vacated. Now, the second part of our argument, the first part of the argument has been a Shoick argument. I know the Court has history with People v. Klein as well as People v. Ben Shoick. The second part of our argument is more of a constitutional speeding trial demand because of the fact that she came into court. She was available. She could have been served. There's nothing in the record that says why she wasn't served. There was some of this issue. We don't know. But as soon as she got revoked, she did come into court to qualify that. What I don't understand, from a more constitutional angle of it, is when she comes into court July 10th, instead of just quashing the warrant, why not quash the bond perpetrator? Now, she was pro se at the time because she came in and you'd think at that time she actually asked for the public defender and then part of the court records is a public application. It was denied. She had to come back in five days later for But again, still pro se, still not knowing what exactly to ask for. And the reason why it surmised part of her motion was she was asking for some help here, not knowing what was going on, not coming in with a lawyer the second time. So part of, you know, if we talk about constitutional speedy trial issue, length of delay, I mean we put down from the date of now, the question from the date of now, the date of July 10th, 328 days, size of the length of delay. Would that be attributable to my client, Mrs. Phillips? I said no, because when she realized there was a problem, she came in. Reason for the delay? Well, it was refiled, there's no doubt. It appeared somehow they issued summonses. I can't tell any proof of avoidance or anything I didn't see. It wasn't clear from their record as to why a summons wasn't served. Assertation of her rights. As soon as she found out, what did she do? She came right into court. If that isn't asserting one's right to say, maybe not clear as to what was going on by the way she wrote her motion, but she was clearly saying something's going on here. I didn't have a trial, I just found out my license is being revocated. Prejudice to the defendant. If a person operates a vehicle and her license is revoked, it's very, very prejudicial to that person, but anything, what type of car she drives, when she drives, where she drives, if she's going to be late for work because she got stopped driving, had no idea. So with that in mind, I asked the court that there are some other issues as to what went on. Clearly, the court did not think, did not come to the conclusion that as two people versus Klein, at the end of the annulling, no days should be counted. At the end of the annulling, no days should be counted. Clearly she filed her motion July 8th, which I would say at least that's two days, and clearly during the time period while her license, while you receive notice of a bond forfeiture, not receive notice, but notice from the Secretary of State of her license being revoked, that to me from the day of the bond forfeiture, and again in the minutes it says no bond forfeited, which you, why would that happen? Clearly she's on the jurisdiction of the court, at least in theory, not maybe reality, but in theory on the jurisdiction of the court for revocation. Are you trying to say that from the date that the annulling occurred until she comes into court, pro se, that those days should count on the speedy trial? That's what Ms. Vahey argued, and I'm arguing to the court, in case the court was not inclined to find that, at least find from the date of the bond forfeiture to the date she came into court, should apply. Because when the bond was forfeited in this cause, I think it was May 20th of 2008, judgment bond forfeiture was 6-20-2008, clearly from that date to the date of when she came into court, which would be July 10th. And we want to be very, very strict about it, at least from July 8th when she filed her motion, because clearly then she's on the jurisdiction of the court by filing basically a pro se appearance, because an appearance can be anything, anything she filed her motion was in two days later with service. So I'm saying if the court didn't find after the date of annulling, at least find from the bond forfeiture, or during, so-called during the term of the arrest warrant on the prior case, because there still was an arrest warrant on the prior case, then they switched it to the new case, and then they entered a bond forfeiture. So with that in mind, I would still argue with the point that there, maybe she hit the points of Belcher and I think it was Baker v. Wingo as to a constitutional analysis of a speedy trial violation. With that in mind, I appreciate the court's time in this. It's a unique set of circumstances, and thank you for the information. Thank you, Counsel. Ms. Kelly, you may reply. I don't believe there are. Thank you. Thank you, Counsel, for your arguments in this matter this afternoon, and we'll be taking them under advisement for written disposition until issued for a stand and brief recess for a panel session.